```
UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
------------------------------------------------------------------------X
EFG BANK AG, CAYMAN BRANCH,                    :
                                                :
                    Plaintiffs,                 :
                                                :
          -v-                                   :    17-CV-4767 (JMF)
                                                :
AXA EQUITABLE LIFE INSURANCE                    :
COMPANY,                                        :
                                                :
                    Defendant.                  :
------------------------------------------------------------------------X
THE DUFFY 2004 LLC and THE TULL 2006 LLC,       :
                                                :
                    Plaintiffs,                 :
                                                :    17-CV-4803 (JMF)
          -v-                                   :
                                                :
AXA EQUITABLE LIFE INSURANCE                    :    OPINION AND ORDER
COMPANY,                                        :
                                                :
                    Defendant.                  :
------------------------------------------------------------------------X
```

JESSE M. FURMAN, United State District Judge:

  In these related cases, the owners and beneficiaries of flexible-premium universal life insurance policies bring claims against the issuer of those policies, Defendant AXA Equitable Life Insurance Company ("AXA"). The Court described the policies at issue in *Brach Family Found., Inc. v. AXA Equitable Life Ins. Co.*, 16-CV-740 (JMF), 2016 WL 7351675 (S.D.N.Y. Dec. 19, 2016), a related case, and will not repeat the description here. For now, it suffices to say two things. First, each of the policies — which are known as Athena Universal Life II ("AUL II") policies — "consists of two distinct components: (1) the life insurance component, for which the insurance company charges a cost to cover the risk of the insured's death (the cost of insurance); and (2) a savings component, where premiums paid in excess of the cost of insurance (and certain other policy charges) accumulate and earn interest at a rate that will not be lower than a guaranteed minimum crediting rate." (*EFG* Docket No. 64 ("*EFG* SAC"), ¶ 5).

Second, under the terms of the policies, AXA is permitted, subject to certain restrictions, to change the cost of insurance ("COI") — which is typically the largest expense that a policyholder has to pay. (*EFG* SAC ¶¶ 33, 35; *Duffy* Docket No. 19 ("*Duffy* FAC") ¶¶ 25, 27). The policies, however, provide that any such changes "will be on a basis that is equitable to all policyholders of a given class, and will be determined based on reasonable assumptions as to expenses, mortality, policy and contract claims, taxes, investment income, and lapses." (*EFG* Docket No. 62 Ex. 2 ("*EFG* Doe Policy"), at 11).

Plaintiffs in these cases allege that, by increasing the COI for a group of life insurance policyholders (namely, holders of policies that: (1) insure individuals who were seventy years or older at the time of issue; and (2) have face values of $1,000,000 or greater), AXA breached their contracts. (*EFG* SAC ¶¶ 4, 73-77; *Duffy* FAC ¶¶ 1-2, 64-68). In addition, they bring claims, sounding in both contract and tort, for breach of the implied covenant of good faith and fair dealing. (*EFG* SAC ¶¶ 78-91; *Duffy* FAC ¶¶ 69-75). They seek compensatory damages and, with respect to the tort good-faith-and-fair-dealing claims, punitive damages. (*EFG* SAC ¶¶ 4, 16, 84; *Duffy* FAC ¶¶ 1, 12, 75). They also seek declaratory relief. (*EFG* SAC ¶¶ 92-95; *Duffy* FAC ¶¶ 76-79). AXA now moves, pursuant to Rule 12(b) of the Federal Rules of Civil Procedure, for partial dismissal. (*EFG* Docket No. 75; *Duffy* Docket No. 64; *see also EFG* Docket No. 76 ("AXA Mem.")). In particular, AXA moves to dismiss Plaintiffs' good-faith-and-fair-dealing claims as well as their requests for punitive damages and declaratory relief. AXA does *not* seek to dismiss Plaintiffs' express breach-of-contract claim. (AXA Mem. 5, 18, 19-20). For the reasons that follow, AXA's partial motion to dismiss is GRANTED.

## DISCUSSION

When reviewing a motion to dismiss, the Court "must accept[] all factual allegations in the complaint and draw[] all reasonable inferences in the plaintiff's favor." *ATSI Commc'ns, Inc. v. Schaar Fund, Ltd.*, 493 F.3d 87, 98 (2d Cir. 2007) (alterations in original). The Court will

2

not dismiss any claims pursuant to Rule 12(b)(6) unless the plaintiff has failed to plead sufficient facts to state a claim to relief that is facially plausible, *see Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007), that is, one that contains "factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged," *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009). More specifically, a plaintiff must allege facts showing "more than a sheer possibility that a defendant has acted unlawfully." *Id.* A complaint that offers only "labels and conclusions" or "a formulaic recitation of the elements of a cause of action will not do." *Twombly*, 550 U.S. at 555. Further, if a plaintiff has not "nudged [its] claims across the line from conceivable to plausible, [those claims] must be dismissed." *Id.* at 570.

As noted, AXA moves to dismiss Plaintiffs' claims for breach of the implied covenant of good faith and fair dealing, their requests for punitive damages, and their prayers for declaratory relief. The Court will begin with the implied covenant claims.

## A. Implied Covenant Claims

Plaintiffs allege that AXA violated the implied covenant of good faith and fair dealing by raising and charging excessive COI rates absent sufficient justification, information disclosure, or basis; and in a manner that improperly targeted Plaintiffs, boosted profits, and forced Plaintiffs to choose between paying premiums "that AXA kn[ew] would no longer justify the ultimate death benefits" and giving up their policies. (*EFG* SAC ¶ 81(g); *Duffy* FAC ¶ 72(g)). More precisely, they bring two species of implied covenant claims. First, they bring claims for *contractual* breach of the implied covenant with respect to the policies issued in nine states, including California. (*EFG* SAC ¶¶ 31, 78-84; *see also EFG* Docket No. 78 ("Pls.' Mem."), at 6 n.4 (withdrawing implied covenant claims alleged with respect to Alabama and Georgia policies)). Second, they allege *tortious* interference of the implied covenant with respect to

3

policies issued in California.  (*EFG* SAC ¶¶ 85-91; *Duffy* FAC ¶¶ 69-75; *see also* Pls.' Mem. 12).  The Court will address each species of claim in turn.[1]

### 1. The Contract-Based Claims

The covenant of good faith and fair dealing, which is implied in all contracts, "embraces a pledge that neither party shall do anything which will have the effect of destroying or injuring the right of the other party to receive the fruits of the contract." *State St. Bank & Trust Co. v. Inversiones Errazuriz Limitada*, 374 F.3d 158, 169 (2d Cir. 2004) (internal quotation marks and citation omitted).  More specifically, it encompasses "any promises which a reasonable person in the position of the promisee would be justified in understanding were included." *Manhattan Motorcars, Inc. v. Automobili Lamborghini,* 244 F.R.D. 204, 214 (S.D.N.Y. 2007) (internal quotation marks omitted).  Significantly, however, an "implied-covenant [contractual] claim can survive a motion to dismiss only if it is based on allegations different than those underlying the accompanying breach of contract claim and the relief sought is not intrinsically tied to the damages allegedly resulting from the breach of contract." *Grant & Eisenhofer, P.A. v. Bernstein Liebhard LLP*, No. 14-CV-9839 (JMF), 2015 WL 1809001, at *4 (S.D.N.Y. Apr. 20, 2015) (internal quotation marks and citation omitted).  That is, "[i]f the allegations do not go beyond the statement of a mere contract breach and, relying on the same alleged acts, simply seek the same damages or other relief already claimed in a companion contract cause of action, they may

---

[1] One passing and cryptic comment by Plaintiffs notwithstanding (*see* Pls.' Mem. 6 ("[T]he law [governing the contractual claims] is not materially different among the states, *other than possibly New York*." (emphasis added))), the parties appear to agree that the laws of the various states at issue with respect to the contractual claims are the same and that California law applies to the tort claims.  (*See* AXA Mem. 5-7 nn.11-12; Pls.' Mem. 6 & n.3, 12).  In light of that, the Court need not and does not engage in a choice-of-law analysis.  *See, e.g.*, *Fed. Ins. Co. v. Am. Home Assurance Co.*, 639 F.3d 557, 566 (2d Cir. 2011) ("[W]here the parties agree that New York law controls, this is sufficient to establish choice of law."); *Fin. One Pub. Co. Ltd. v. Lehman Bros. Special Fin., Inc.*, 414 F.3d 325, 331 (2d Cir. 2005) ("[W]here the court has determined that the result would be the same under either jurisdiction's law, it need not decide which to apply." (emphasis omitted)).

4

be disregarded as superfluous as no additional claim is actually stated." *Careau & Co. v. Sec. Pac. Bus. Credit, Inc.*, 222 Cal. App. 3d 1371, 1395 (1990); *accord Fleisher v. Phoenix Life Ins. Co.*, 858 F. Supp. 2d 290, 298-99 (S.D.N.Y. 2012).

In this case, Plaintiffs' contractual implied-covenant claims are duplicative of their express contract claims. The gravamen of Plaintiffs' contract claims is that AXA increased COI rates for reasons other than those permitted under the terms of the policies (namely, "based on reasonable assumptions as to expenses, mortality, policy and contract claims, taxes, investment income, and lapses" (*EFG* Doe Policy 11)) and impermissibly discriminated against certain classes of insureds. (*EFG* SAC ¶¶ 4, 13-14, 38-44, 73-77; *Duffy* FAC ¶¶ 30-35, 64-68). The gravamen of their implied-covenant claims is the exact same. (*EFG* SAC ¶¶ 4, 13-14, 38-44, 78-91; *Duffy* FAC ¶¶ 30-35, 69-75). In fact, with one exception — Plaintiffs' claim that AXA failed to "provide or make available the documents that Defendant contends support its alleged bases for raising the cost of insurance rates" (*EFG* SAC ¶ 81(h); *Duffy* FAC ¶ 72(h)) — the allegations underlying the two claims are identical in substance, if not identical in words. (AXA Mem. 8-9 (chart comparing the language of Plaintiffs' express contract claims and implied-covenant claims)). Nor does Plaintiffs' allegation regarding the non-disclosure of documents save their claims, as the relief they seek is "intrinsically tied to the damages allegedly resulting from the breach of contract." *Grant & Eisenhofer*, 2015 WL 1809001, at *4 (internal quotation marks and citation omitted). That is, the damages Plaintiffs seek as a result of AXA's alleged failure to turn over documents is identical to the damages they seek for the alleged breach of contract. Thus, the fact that they do not allege non-disclosure of documents as a basis for their express contract claim (presumably because the policies contain no such provision) "does not mean that those acts support a separate claim for breach of an implied covenant of good faith." *Alter v. Bogoricin*, No. 97-CV-662 (MBM), 1997 WL 691332, at *8 (S.D.N.Y. Nov. 6, 1997) (Mukasey, J.).

In arguing otherwise, Plaintiffs rely on cases for the proposition that the implied covenant of good faith and fair dealing "finds particular application in situations where one party is invested with a discretionary power affecting the rights of another." (Pls.' Mem. 7 (quoting *Sec. Officers Serv., Inc. v. State Comp. Ins. Fund*, 17 Cal. App. 4th 887, 894 (1993)). As Plaintiffs note (*see id.* at 8-9), that is indeed the basis on which other courts have denied motions to dismiss implied-covenant claims in COI-increase actions similar to this one. *See In re Lincoln Nat'l COI Litig.*, No. CV 16-06605 (GJP), 2017 WL 4021134, at *10-11 (E.D. Pa. Sept. 11, 2017); *EFG Bank AG, Cayman Branch v. Transamerica Life Ins. Co.*, No. 16-CV-8104 (CAS), 2017 WL 3017596, at *9 (C.D. Cal. July 10, 2017); *Feller v. Transamerica Life Ins. Co.*, No. 16-CV-1378 (CAS), 2016 WL 6602561, at *12 (C.D. Cal. Nov. 8, 2016); *DCD Partners, LLC v. Transamerica Life Ins. Co.*, No. 15-CV-3238 (CAS), 2015 WL 5050513, at *8 (C.D. Cal. Aug. 24, 2015). But the policies at issue in those cases did not explicitly constrain the insurers to apply COI increases "equitably" or use only "reasonable" assumptions in increasing COI rates. *See Lincoln Nat'l COI Litig.*, 2017 WL 4021134, at *3; *EFG Bank AG*, 2017 WL 3017596, at *2; *Feller*, 2016 WL 6602561, at *2; *DCD Partners*, 2015 WL 5050513, at *2, 5. Thus, the plaintiffs could state implied-covenant claims by alleging that the defendants had "exercis[ed] their limited discretion under the Policies in an unreasonable and unfair manner." *Lincoln Nat'l COI Litig.*, 2017 WL 4021134, at *10-11. Here, there are no such gaps in the policy language. That is, the policies *expressly* required AXA to exercise its discretion reasonably and equitably. Accordingly, Plaintiffs' implied-covenant claims add nothing to the mix. *See, e.g.*, *Fleisher*, 858 F. Supp. 2d at 299-300 (dismissing an implied-covenant claim in a COI-increase case).

Perhaps recognizing the difficulty of distinguishing between their implied-covenant and express contract claims, Plaintiffs argue as a fallback that, "[e]ven if the implied covenant claim were duplicative, Plaintiffs may plead this claim in the alternative to their express breach claim." (Pls.' Mem. 9-10 (citing Fed. R. Civ. P. 8(d)(2))). "But an implied-covenant claim is not a valid

6

alternative theory of recovery when it is based on the exact same allegations as a breach-of-contract claim, as it is here." *Alaska Elec. Pension Fund v. Bank of Am. Corp.*, 175 F. Supp. 3d 44, 64 (S.D.N.Y. 2016) (internal quotation marks and brackets omitted). Accordingly, Plaintiffs' contractual implied-covenant claims must be and are dismissed.

### 2. The Tort-Based Claims

Whether Plaintiffs state a valid claim under California law for *tortious* interference with the implied covenant of good faith and fair dealing is a closer question. Although implied-covenant claims typically sound in contract, California courts recognize an "exception to that general rule: tort remedies are available for a breach of the covenant in cases involving insurance policies." *Cates Constr., Inc. v. Talbot Partners*, 980 P.2d 407, 416 (Cal. 1999). "[T]he existence of this remedy has been justified by the 'special relationship' existing between insurer and insured, which is characterized by elements of public interest, adhesion and fiduciary responsibility." *Careau & Co. v. Sec. Pac. Bus. Credit, Inc.*, 222 Cal. App. 3d 1371, 1395 (1990). For one thing, insurance policies are generally "not purchased for profit or advantage; rather, they are obtained for peace of mind and security in the event of an accident or other catastrophe." *Cates Constr.*, 980 P.2d at 416. For another, "an insured faces a unique 'economic dilemma' when its insurer breaches the implied covenant of good faith and fair dealing. Unlike other parties in contract who typically may seek recourse in the marketplace in the event of a breach, an insured will not be able to find another insurance company willing to pay for a loss already incurred." *Id.* (quoting *Foley v. Interactive Data Corp.* 765 P.2d 373, 396 (Cal. 1988)).

Significantly, however, "an insured cannot maintain a claim for tortious breach of the implied covenant of good faith and fair dealing absent a covered loss." *Benavides v. State Farm Gen. Ins. Co.*, 136 Cal. App. 4th 1241, 1250 (2006) (citing cases). That is, "[b]ecause the essence of the tort of the implied covenant of good faith and fair dealing is focused on the prompt payment of benefits due under the insurance policy, there is no cause of action for breach

7

of the covenant . . . when no benefits are due." *Progressive West Ins. Co. v. Yolo County Superior Court*, 135 Cal. App. 4th 263, 279 (2005); *see also, e.g.*, *Adams v. United of Omaha Life Ins. Co.*, No. 12-CV-969 (JST), 2013 WL 12114060, at *4 (C.D. Cal. Aug. 14, 2013) ("In order to state a claim for breach of the implied covenant of good faith and fair dealing by an insurer, [a] plaintiff must allege that the insurer 'withheld payment of an insured's claim.'" (quoting *Love v. Fire Ins. Exch.*, 221 Cal. App. 3d 1136, 1151 (1991)); *U.S. Bank Nat. Ass'n v. PHL Variable Ins. Co.*, No. 2:11-CV-09517 (ODW), 2012 WL 1525012, at *2 (C.D. Cal. Apr. 26, 2012) ("To establish tort liability against an insurer for breach of the covenant, a plaintiff must show . . . benefits due under the policy were withheld . . . ." (citing *Love,* 221 Cal. App. 3d at 1151); *Brizuela v. Calfarm Ins. Co.,* 116 Cal. App. 4th 578, 592 (2004) ("The gravamen of a claim for breach of the covenant of good faith and fair dealing, which sounds in both contract and tort, is the insurer's refusal, without proper cause, to compensate the insured for a loss covered by the policy.").

Plaintiffs' claims founder on this requirement, as they do not allege that AXA has withheld insurance benefits owed under the policies. Indeed, "those benefits will not be due until the death of [the insureds]." *Adams*, 2013 WL 12114060, at *4; *accord U.S. Bank Nat. Ass'n*, 2012 WL 1525012, at *3. At most, Plaintiffs contend that AXA denied them benefits in the form of "their policy account values and guaranteed interest." (Pls.' Mem. 16). Critically, however, those "benefits" do not relate to the "life insurance component" of the AUL II policies. (*EFG* SAC ¶ 5). Instead, they relate solely to the "distinct . . . savings component" of the policies. (*Id.*). In that sense, Plaintiffs' claims arise less from the relationship between Plaintiffs as insureds and AXA as insurer than they do from the relationship between Plaintiffs as depositors and AXA as a bank (or similar financial institution). Unlike insurers, however, "banks . . . are not fiduciaries for their depositors" and "the bank-depositor relationship is not a 'special relationship' . . . such as to give rise to tort damages when an implied contractual

8

covenant of good faith is broken." *Copesky v. Superior Court*, 229 Cal. App. 3d 678, 694 (1991); *accord Careau & Co.*, 222 Cal. App. 3d at 1391-92, 1399-1401; *Price v. Wells Fargo Bank*, 213 Cal. App. 3d 465, 476-78 (1989); *see also Cates Constr.*, 21 Cal. 4th at 46 n.9 (citing cases). To recognize a tort claim in these circumstances, therefore, would be to expand the narrow exception for insurance policy cases beyond its current contours. *Cf. Cates Constr.*, 21 Cal. 4th at 46 ("It is firmly established that the insurance policy cases represent a major departure from traditional principles of contract law. Thus, we have cautioned courts to exercise great care in considering whether to extend the exceptional approach taken in those cases to another contract setting." (internal quotation marks and citations omitted)).

The Court declines to extend the tort exception to this case, not only because doing so finds little or no support in California case law, but also because doing so finds little or no support in the underlying policy rationales for the exception. As noted, California courts justify the exception in part on the ground that insurance policies are generally "not purchased for profit or advantage; rather, they are obtained for peace of mind and security in the event of an accident or other catastrophe." *Id.* at 44. But, putting aside whether that description is apt generally, it is certainly not apt here. After all, the "savings component" of the AUL II policies *is* purchased for profit and advantage and, at least during the life of the policies, the insureds "fully reaped the benefit of peace of mind and security that accompanies a life insurance policy." *U.S. Bank Nat. Ass'n*, 2012 WL 1525012, at *3. (On top of that, Plaintiffs are not even the original insureds, but rather sophisticated entities that indisputably purchased the policies for investment purposes. (*See EFG* SAC ¶¶ 20-28; *Duffy* FAC ¶ 16; *see also* Pls.' Mem. 19; AXA Mem. 14 n.15).) California courts have also based the exception on the proposition that, "when an insurer in bad faith fails to properly settle or pay a claim, the insured cannot turn to the marketplace to find another insurance company willing to pay for the loss already incurred." *Jonathan Neil & Assocs., Inc. v. Jones*, 33 Cal. 4th 917, 938 (2004) (internal quotation marks omitted); *accord*

9

*Cates Constr.*, 21 Cal. 4th at 44, 54. Once again, however, that rationale does not fit here, as Plaintiffs — who have incurred no loss as of yet — face no such "economic dilemma." *Foley*, 47 Cal. 3d at 692. That is, to the extent that they allege that AXA deprived them of benefits relating to the "savings component" of the policies, they *can* turn to the marketplace and invest their money elsewhere.

In arguing that the exception for insurance policy cases does apply here, Plaintiffs rely most heavily on a set of cases decided by a single judge on the United States District Court for the Central District of California. (*See* Pls.' Mem. 17). Those cases did involve policies — from Transamerica — much like those at issue here, with both an insurance component and a savings component. And in denying motions to dismiss claims much like those at issue here, the Court did hold that the plaintiffs had adequately alleged that COI increases deprived them of two "benefits" under their policies: "the accumulated value of their accounts" and "the monthly accrual of guarantee interest based upon the accumulated value in their accounts." *Feller*, 2016 WL 6602561, at *13; *see also EFG Bank AG*, 2017 WL 3017596, at *9; *DCD Partners*, 2015 WL 5050513, at *8. In doing so, however, the Court failed to cite, let alone address, the authority discussed above, which makes clear that the requisite "benefit" must relate to insurance qua insurance — namely, "the security against losses and third party liability." *Jonathan Neil*, 33 Cal. 4th at 939. Relatedly, the Court failed to consider whether allowing the plaintiffs to bring a tort claim in these circumstances was consistent with the policy rationales underlying the exception. It thus failed to heed the California courts' admonitions to "proceed with caution," *Freeman & Mills, Inc. v. Belcher Oil Co.*, 11 Cal. 4th 85, 92, 102 (1995) (quoting *Seaman's Direct Buying Serv., Inc. v. Standard Oil Co.*, 36 Cal. 3d 752, 769 (1984)) (overruling *Seaman's* and establishing "a general rule precluding tort recovery for noninsurance contract breach"), and to "exercise great care in considering whether to extend the exceptional approach taken in [the insurance policy] cases" to other contract settings, *Cates Constr.*, 21 Cal. 4th at 46 (internal

quotation marks and citation omitted). Accordingly, the Court finds the Transamerica cases unpersuasive and declines to follow them.

Plaintiffs rely on a handful of other cases for the proposition that California law does not limit tortious interference claims to actions involving the denial of insurance policy proceeds or mishandling of insurance claims (Pls.' Mem. 12-16), but their reliance is misplaced. All but one of the cases on which they rely involved "claims handling policies and practices" and, thus, are distinguishable. *Notrica v. State Comp. Ins. Fund*, 70 Cal. App. 4th 911, 918 (1999); *see Sec. Officers Serv.*, 17 Cal. App. 4th at 891-92 (noting discovery of "improprieties in claims handling"); *Schwartz v. State Farm Fire & Cas. Ins.,* 88 Cal. App. 4th 1329, 1332, 1339-40 (2001) (discussing "improper claims handling"); *see also Jonathan Neil*, 33 Cal. 4th at 940 & n.9 (distinguishing *Security Officers Service* and *Notrica* on the ground that, in those cases, "the overcharging of premiums was inextricably linked to the mishandling of claims — precisely the kind of bad faith behavior that goes to the heart of the special insurance relationship and gives rise to tort remedies"); *U.S. Bank Nat'l Ass'n*, 2012 WL 1525012, at *4 (distinguishing *Schwartz* on the ground that it "involve[d] claims mishandling"). *But see EFG Bank AG*, 2017 WL 3017596, at *9 (holding that the plaintiffs adequately alleged loss of a benefit where, "in essence," they alleged that the insurer's increase in COI compelled them "to pay an increase in premiums in order to retain death benefits under the Policies" (citing *Notrica*, 70 Cal. App. 4th at 923-24)). Plaintiffs' final case, *Spindle v. Travelers Insurance Co.,* 66 Cal. App. 3d 951 (1978), held that tort damages were available for the cancellation of an insurance policy for improper reasons (namely, to pressure a group of doctors to accept an increase in their premiums beyond what the policies permitted). In reaching that decision, however, the Court stated that "the conduct of the insurer effectively deprive[d] the insured of the benefit of his bargain, *i.e.*, the coverage for the period for which he paid a premium." *Id.* at 958. In this case, by contrast, Plaintiffs were not deprived of any such benefit, as their losses would have been covered had the

11

insureds died during the life of the policies. *See U.S. Bank Nat'l Ass'n*, 2012 WL 1525012, at *3 (distinguishing *Spindle* on similar grounds). Moreover, the California Supreme Court cast doubt on the continuing validity of *Spindle* in *Jonathan Neil*, and strongly suggested that an insurer's cancellation of a policy can give rise to tort liability only in extreme circumstances — where, for example, the cancellation is done in bad faith to avoid payment of imminent claims. *See Jonathan Neil*, 33 Cal. 4th at 941 & n.11; *see also Avery Dennison Corp. v. Allendale Mut. Ins. Co.*, 310 F.3d 1114, 1117 (9th Cir. 2002) ("Except perhaps in highly extraordinary circumstances, California does not permit recovery on a bad faith claim unless insurance benefits are due under the policy."). "No such termination [is] alleged in this case." *Jonathan Neil*, 33 Cal. 4th at 941 n.11.

In short, although the question is a close one, the Court concludes that, in the circumstances of this case, Plaintiffs cannot bring tort claims under California law for breach of the implied covenant of good faith and fair dealing. Accordingly, those claims are dismissed.

**B. Punitive Damages**

Next, AXA moves to dismiss Plaintiffs' punitive damages claims. (AXA Mem. 18). AXA argues that Plaintiffs' complaints "contain[] no facts that support elevating the alleged contractual breach into the kind of consciously wrongful and outrageous conduct necessary for a punitive damages award." (AXA Mem. 19). The Court need not decide whether that is the case, however, because Plaintiffs' punitive damages claims fail for a more fundamental reason: They are sought only in connection with Plaintiffs' tort claims (*see* Pls.' Mem. 6 n.4, 20), and for good reason. *See, e.g.*, *Cates Constr.*, 21 Cal. 4th at 61 ("In the absence of an independent tort, punitive damages may not be awarded for breach of contract even where the defendant's conduct in breaching the contract was wilful, fraudulent, or malicious." (internal quotation marks omitted)); *N.Y. Univ. v. Cont'l Ins. Co.*, 87 N.Y.2d 308, 319-20 (1995) (dismissing a punitive damages claim due to "the absence of an underlying tort duty sufficient to support a claim for

12

punitive damages"); *see also Carvel Corp. v. Noonan*, 350 F.3d 6, 24 (2d Cir. 2003) ("[I]t is hornbook law that punitive damages are unavailable in ordinary contract actions."). Given the Court's dismissal of Plaintiffs' tort claims, it follows that their claims for punitive damages must be and are dismissed as well.

## C. Declaratory Relief

Finally, AXA contends that Plaintiffs' request for relief under the Declaratory Judgment Act ("DJA"), 28 U.S.C. § 2201, should be dismissed as duplicative. (*See* AXA Mem. 19-22). The Court agrees. Declaratory relief is a prospective remedy intended to resolve or mitigate disputes that may yield later litigation. Such disputes "must not be nebulous or contingent but must have taken on fixed and final shape so that a court can see what legal issues it is deciding, what effect its decision will have on the adversaries, and some useful purpose to be achieved in deciding them. Where the relief sought would . . . merely determine a collateral legal issue governing certain aspects of . . . pending or future suits, a declaratory judgment action falls outside the constitutional definition of a 'case' in Article III," and thus should not proceed. *Jenkins v. United States*, 386 F.3d 415, 418 (2d Cir. 2004) (internal quotation marks and citations omitted). More generally, a decision whether to award relief under the DJA lies within the discretion of the district court; in making that determination, a district court should consider: "(1) whether the judgment will serve a useful purpose in clarifying or settling the legal issues involved; and (2) whether a judgment would finalize the controversy and offer relief from uncertainty." *Duane Reade, Inc. v. St. Paul Fire & Marine Ins. Co.*, 411 F.3d 384, 389 (2d Cir. 2005). The court may also weigh other factors, including "whether there is a better or more effective remedy" than the DJA. *Dow Jones & Co. v. Harrods Ltd.*, 346 F.3d 357, 360 (2d Cir. 2003). Courts generally reject a DJA claim when other claims in the suit will resolve the same issues. *See, e.g.*, *City of Perry, Iowa v. Procter & Gamble Co.*, 188 F. Supp. 3d. 276, 286

(S.D.N.Y. 2016); *Fleisher*, 858 F. Supp. 2d at 302-03; *Amusement Indus., Inc. v. Stern*, 693 F. Supp. 2d 301, 311-12 (S.D.N.Y. 2010).

In this case, Plaintiffs seek a declaration "that Defendant's cost of insurance rate increase is improper under the Plaintiff Policies and that the policies' account values be recalculated according to the original cost of insurance rates" and "that Defendant's purported 'class' of policies defined by issue age and face amount is an improper class." (*EFG* SAC ¶ 94; *Duffy* FAC ¶ 78). But, if successful, Plaintiffs' contract claims — which call for a determination of whether AXA "materially breached the Plaintiff Policies," including "[b]y imposing excessive [COI] rates" or "specifically targeting the Discriminated Group" — would provide that very relief. (*EFG* SAC ¶¶ 75, 81; *Duffy* FAC ¶¶ 66, 72). Plaintiffs also seek a declaration from the Court "setting forth the specific guidelines that govern the factual circumstances under which Defendant can raise the cost of insurance rates." (*EFG* SAC ¶ 94; *Duffy* FAC ¶ 78). To the extent, however, that Plaintiffs seek "specific guidelines" concerning the matters at issue in this case — for example, with respect to the bases on which AXA can raise its COI rates and as to whom — the contract claim, once again, will provide complete relief. And to the extent that Plaintiffs go beyond the matters at issue in this case and seek "specific guidelines" as to other matters, it would be inappropriate for the Court to opine. *See, e.g.*, *Nat'l Org. for Marriage, Inc. v. Walsh*, 714 F.3d 682, 687 (2d Cir. 2013) ("To be justiciable, a cause of action must be ripe[.] . . . A claim is not ripe if it depends upon contingent future events that may not occur as anticipated, or indeed may not occur at all." (internal quotation marks and citations omitted)); *Nike, Inc. v. Already, LLC*, 663 F.3d 89, 94-95 (2d Cir. 2011) ("In order to qualify as a justiciable 'case or controversy' under Article III, '[t]he controversy must be definite and concrete, touching the legal relations of parties having adverse legal interests.' The 'case or controversy' requirement is not satisfied by a 'difference or dispute of a hypothetical or abstract character.'" (quoting *Aetna Life Ins. Co. v. Haworth*, 300 U.S. 227, 240-41 (1937))), *aff'd*, 568

U.S. 85 (2013). In short, to the extent that the Court has authority to grant relief at all, Plaintiffs' contract claims "'will necessarily settle the issues for which the declaratory judgment is sought,' meaning that the DJA claim, 'will serve no useful purpose' and will not 'serve to offer relief from uncertainty.'" *City of Perry*, 188 F. Supp. 3d at 286 (quoting *Amusement Indus.*, 693 F. Supp. 2d at 311-12 (internal quotation marks omitted)). Accordingly, the Court exercises its discretion and dismisses Plaintiffs' declaratory judgments claims as duplicative. *See id.*; *Fleisher*, 858 F. Supp. 2d at 302-03. *But see, e.g.*, *DCD Partners, LLC*, 2015 WL 5050513 at *11 (denying a motion to dismiss a DJA claim as duplicative in similar circumstances); *Feller*, 2016 WL 6602561, at *12-13 (same).

## CONCLUSION

For the foregoing reasons, AXA's partial motion to dismiss is GRANTED, and Plaintiffs' implied-covenant claims, punitive damages claims, and declaratory judgment claims are dismissed. AXA shall file its answer to Plaintiffs' remaining claims within twenty-one days of the date of this Opinion and Order.

The Clerk of Court is directed to terminate Docket No. 64 in 17-CV-4803 and Docket No. 76 in 17-CV-4767.

SO ORDERED.

Dated: February 14, 2018
New York, New York

_____
JESSE M. FURMAN
United States District Judge

15