USDC SDNY
DOCUMENT
ELECTRONICALLY FILED
DOC #:_____
DATE FILED: 04/20/2018

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
------------------------------------------------------------------X
EFG BANK AG, CAYMAN BRANCH, et al.,

                Plaintiffs,                17-CV-4767 (JMF)

        -v-                MEMORANDUM OPINION
                              AND ORDER

AXA EQUITABLE LIFE INSURANCE COMPANY,

                Defendant.
------------------------------------------------------------------X

JESSE M. FURMAN, United States District Judge:

      In a text-only Order entered on February 15, 2018, the Court denied a letter motion by Plaintiff EFG Bank, AG, Cayman Branch ("EFG") seeking a protective order requiring Defendant AXA Equitable Life Insurance Company ("AXA") to use the Hague Convention on the Taking of Evidence Abroad in Civil or Commercial Matters of March 18, 1970 ("the Hague Convention") to obtain certain EFG documents located in Switzerland. (Docket No. 105). On March 1, 2018, EFG filed a motion for reconsideration of that decision. (Docket No. 113).

      Motions for reconsideration are governed by Federal Rule of Civil Procedure 59(e) and Local Civil Rule 6.3, which are meant to "ensure the finality of decisions and to prevent the practice of a losing party examining a decision and then plugging the gaps of a lost motion with additional matters." *Medisim Ltd. v. BestMed LLC*, No. 10-CV-2463 (SAS), 2012 WL 1450420, at *1 (S.D.N.Y. Apr. 23, 2012). A district court "has broad discretion in determining whether to grant a motion [for reconsideration]." *Baker v. Dorfman*, 239 F.3d 415, 427 (2d Cir. 2000). Such a motion "is appropriate where 'the moving party can point to controlling decisions or data that the court overlooked — matters, in other words, that might reasonably be expected to alter

the conclusion reached by the court.'" *Medisim*, 2012 WL 1450420, at *1 (quoting *In re BDC 56 LLC*, 330 F.3d 111, 123 (2d Cir. 2003)). "The major grounds justifying reconsideration are an intervening change of controlling law, the availability of new evidence, or the need to correct a clear error or prevent manifest injustice." *Virgin Atl. Airways, Ltd. v. Nat'l Mediation Bd.*, 956 F.2d 1245, 1255 (2d Cir. 1992) (internal quotation marks omitted). It is well established that the rules permitting motions for reconsideration must be "narrowly construed and strictly applied so as to avoid repetitive arguments on issues that have been considered fully by the [C]ourt." *United States v. Treacy*, No. 08-CR-0366 (RLC), 2009 WL 47496, at *1 (S.D.N.Y. Jan. 8, 2009).

Applying those standards here, the Court denies EFG's motion.[1] EFG does not argue that the Court overlooked controlling decisions or data, that there has been an intervening change in controlling law, or that new evidence is available. Instead, it argues that reconsideration is warranted to correct a clear error or prevent manifest injustice because its production of documents located in Switzerland would violate Article 271 of the Swiss Criminal Code. (Docket No. 114 ("EFG's Br."), at 1). The Court disagrees. As a general matter, a party seeking a protective order under Rule 26(c) of the Federal Rules of Civil Procedure has the burden of establishing "good cause." *Gambale v. Deutsche Bank AG*, 377 F.3d 133, 142 (2d Cir. 2004); *see also In re Auto. Refinishing Paint Antitrust Litig.*, 358 F.3d 288, 305 (3d Cir. 2004) (collecting cases holding that "the proposing party bears the burden of persuasion"). More specifically, a party seeking an order to apply Hague Convention procedures in lieu of the

---

[1] In connection with its motion, EFG sought leave to file a declaration from its Swiss law expert in light of Local Rule 6.3's prohibition on the submission of affidavits or declarations absent permission by the Court. (Docket No. 112; *see also* Docket No. 120 (deferring decision on the request and granting AXA leave to file an expert declaration pending the Court's decision)). That request is granted, and both sides are granted leave, *nunc pro tunc*, to file their expert declarations.

procedures set forth in the Federal Rules of Civil Procedure must demonstrate that a specific foreign law "actually bars the production or testimony at issue." *Alfadda v. Fenn*, 149 F.R.D. 28, 34 (S.D.N.Y. 1993). "In order to meet that burden, the party resisting discovery must provide the Court with information of sufficient particularity and specificity to allow the Court to determine whether the discovery sought is indeed prohibited by foreign law." *Id*. Notably, however, the Court's ultimate task "is not to definitively determine what Swiss law is, but rather to decide whether the risk of prosecution under Article 271 is so great" as to warrant a protective order. *Microsoft Corp. v. Weidmann Elec. Tech. Inc.*, No. 5:15-CV-153 (GWC), 2016 WL 7165949, at *12 (D. Vt. Dec. 7, 2016).[2]

EFG fails to demonstrate with sufficient particularity and specificity that the discovery sought is prohibited by Swiss law. Article 271 of the Swiss Criminal Code prohibits "carr[ying] out activities on behalf of a foreign state on Swiss territory without lawful authority, where such activities are the responsibility of a public authority or public official." Schweizerisches Strafgesetzbuch, art. 271. As a general matter, the production and taking of evidence in Switzerland qualifies as a responsibility of a public authority (usually, of the court system) and thus falls within the scope of Article 271. (*See* Docket No. 100, Ex. D ("Becker Decl."), ¶ 10; Docket No. 104, Ex. A ("Hempel Decl."), ¶ 14; Docket No. 112, Ex. A ("Becker Reply Decl."), ¶ 6). Significantly, however, decisions of the Swiss Federal Department of Justice and Police ("FDJP") — an administrative, non-judicial body — indicate that Swiss law does not preclude the *voluntary* production of documents by a private party and that "voluntary" is defined broadly

---

[2] In undertaking that inquiry, the Court "may consider any relevant material or source, including testimony, whether or not submitted by a party or admissible under the Federal Rules of Evidence." Fed. R. Civ. P. 44.1.

to include the production of discovery so long as the party faces only procedural consequences rather than criminal sanctions for its failure to produce.  (*See* Hempel Decl. ¶¶ 12-21).  In *Application to Grant Authorization Concerning the Surrender of Documents in an English Civil Proceeding*, April 10, 2014, VPB/JAAC 2016.3, pp. 32-37 (Docket No. 124, Ex. 1 ("April 10, 2014 Decision")), for example, the FDJP found that there was no Article 271 violation "if no criminal sanctions are threatened in the event of a refusal to cooperate [with the discovery order]."  *Id.* ¶ 7.  The FDJP noted that, under the discovery order at issue in that case, "the parties undert[ook] to mutually surrender certain documents."  *Id.*  Because "there [was] no order by a foreign authority" threatening criminal sanctions in that case, the FDJP found that Article 271 did not apply.  *Id.*

Similarly, in *Application to Grant Authorization to Provide Information to a U.S. Civil Court*, Feb. 12, 2014, VPB/JAAC 2016.4, pp. 38-43 (Docket No. 124, Ex. 3 ("Feb. 12, 2014 Decision")), the FDJP found that Article 271 did not apply to "the collection and transfer of one's own information."  *Id.* ¶ 11.  The FDJP contrasted that situation with "the collection and transfer of identifying information *about third parties*," which would require "authorization according to Art. 271."  *Id.*  Finally, in *Granting Authorization Within the Meaning of Article 271(1) of the Swiss Criminal Code to Submit an Affidavit in a Foreign Civil Proceeding*, April 11, 2016, VPB/JAAC 2016.7, pp. 56-61 (Docket No. 124, Ex. 4 ("April 11, 2016 Decision")), the FDJP reiterated that Article 271 is not violated "if the refusal of cooperation [with the discovery request] does not lead to criminal sanctions."  *Id.* ¶ 8.  As it had in the April 10, 2014 Decision, the FDJP concluded that discovery would not run afoul of the law because there was "no order of the foreign court associated with a threat of [criminal] sanctions."  *Id.*; *see also, e.g.*,

4

*Motorola Credit Corp. v. Uzan*, 73 F. Supp. 3d 397, 404 n.3 (S.D.N.Y. 2014) (dismissing an argument that Article 271 precluded production of bank documents located in Switzerland on the ground that the Swiss law "speaks only tangentially to the production of documents and, according to the Swiss Federal Department of Justice and Police, does not create criminal liability for a bank that adheres to a U.S. court's order to search for bank account documents located in Swiss bank branches"), *reconsideration granted on other grounds*, 132 F. Supp. 3d 518 (S.D.N.Y. 2015).[3]

Conspicuously, EFG fails to identify a single case in which a party was found to have violated Article 271 by disclosing its own documents absent a court order threatening criminal sanctions.[4] That is presumably because no such case exists. Indeed, EFG's own expert on Swiss law concedes that no court has held that production by a party in the circumstances presented here violates Article 271. (*See* Becker Decl. ¶ 18 ("[T]he fact that a voluntary production would

---

[3] EFG relies on the FDJP's January 2013 "Guidelines for International Judicial Assistance in Civil Matters" (Becker Decl., Ex. 1 (the "Guidelines")), but they do not call for a different result. Indeed, the Guidelines expressly provide that Article 271 is not implicated "in the event that a refusal to cooperate [with the discovery request] leads only to consequences of a procedural nature" and that it is only when "non-compliance by a party to the proceedings leads to sanctions that are not of a procedural nature (e.g. the criminal offen[s]e of *contempt of court*)" that Article 271 may be violated. Guidelines 20-21.

[4] The closest EFG comes to citing authority for its position is its reliance on *SEC v. Stanford Int'l Bank, Ltd.*, 776 F. Supp. 2d 323, 333 (N.D. Tex. 2011), in which the court concluded that Article 271 "apparently" criminalizes the production abroad of documents in Switzerland. (EFG's Br. 18). But that decision is neither binding nor persuasive. It predated both the 2013 FDJP Guidelines and the FDJP decisions discuss above. And the objection was from a non-party. *See* 776 F. Supp. 2d at 326-27; *cf. Coca-Cola Foods v. Empresa Comercial Internacional De Frutas S.A.*, No. 96-358-CIV-T-17C, 1997 WL 370121, at *7 (M.D. Fla. June 12, 1997) (rejecting an Article 271 objection to discovery on the ground that the defendants had "subjected themselves to the privileges and protections of this country's laws by moving . . . to dismiss . . . and they cannot now deny the obligations and duties that foreseeably arise from those same laws").

not violate Article 271 has, to my knowledge, never been judicially confirmed in Switzerland."); Becker Reply Decl. ¶ 12 (acknowledging that Swiss courts have not "decided" whether document production compelled by a non-procedural sanction could violate Article 271)). In the face of that vacuum, EFG is left to argue that *AXA* fails to cite authority okaying disclosure in these circumstances (EFG's Br. 10) and that there is a "*risk* that a forced production of documents located in Switzerland" would be "subject to Article 271." (Becker Decl. ¶ 18 (emphasis added)). But it is *EFG's* burden to prove that Swiss law "actually bars" the production, not AXA's burden to prove the converse. *See British Int'l Ins. Co. Ltd. v. Seguros La Republica, S.A.*, No. 90-CV-2370 (JFK) (FM), 2000 WL 713057 at *8 (S.D.N.Y. June 2, 2000). And a mere "risk" that Article 271 might be applied is insufficient to carry EFG's burden. *See, e.g.*, *In re Air Cargo Shipping Servs. Antitrust Litig.*, No. 06-MDL-1775 (VVP), 2010 WL 2976220, at *1 (E.D.N.Y. July 23, 2010) ("The possibility that [party requesting the protective order] will suffer hardship in complying with the discovery order is speculative at best. Although the defendant cites the prospect of criminal sanctions, . . . it has cited no instance in which such sanctions have ever been imposed.").

In short, EFG fails to establish with "sufficient particularity and specificity" that Article 271 would prohibit disclosure of the materials at issue here in the absence of a court order threatening criminal sanctions. *Alfadda*, 149 F.R.D. at 34. There is, of course, no such order in place here. Moreover, there is no reason to believe that the Court will impose sanctions of any kind, let alone criminal sanctions, as EFG represents that it is ready and willing to produce the materials at issue. (EFG's Br. 1 ("EFG wants nothing more than to complete its production of documents in this case and proceed promptly with the remainder of discovery.")). Accordingly,

EFG's motion for reconsideration of the Court's denial of its request for a protective order is DENIED.[5] The Clerk of Court is directed to terminate Docket No. 113.

SO ORDERED.

Dated: April 20, 2018
New York, New York

_____
JESSE M. FURMAN
United States District Judge

---

[5] Because EFG does not meet its burden to show that the discovery request actually conflicts with Swiss law, the Court need not address the parties' arguments concerning *Societe Nationale Industrielle Aerospatiale v. United States District Court for the Southern District of Iowa*, 482 U.S. 522 (1987). *See Motorola Credit Corp.*, 73 F. Supp. 3d at 400 (addressing the multifactor test in *Aerospatiale* only after finding that "foreign laws . . . prohibit such discovery").

7