

March 14, 2019

**VIA ECF**

Hon. Jesse M. Furman
United States District Court
Southern District of New York
40 Foley Square
New York, NY 10007

**Orrick, Herrington & Sutcliffe LLP**
2050 Main Street
Suite 1100
Irvine, CA 92614-8255

+1 949 567 6700

**orrick.com**

**Khai LeQuang**
E  klequang@orrick.com
D  +1 949 852 7708
F  +1 949 567 6710

Re: *EFG Bank AG, Cayman Branch, et al. v. AXA Equitable Life Ins. Co.,* 17 Civ. 4767 (JMF) (S.D.N.Y.) [rel. 16 Civ. 740, 17 Civ. 4803, 17 Civ. 9355, 18 Civ. 2111]

Dear Judge Furman:

      Plaintiffs submit this response to AXA's letter motion to compel filed on March 11, 2019.  ECF 266.  AXA's Motion, brought at the end of discovery on issues AXA has known about for over a year, is yet another attempt to delay this case and unduly burden Plaintiffs.[1]  Plaintiffs respectfully request that the Court deny the Motion in its entirety.

      **Valuations Documents:**  None of the documents AXA seeks in its Motion are relevant to any claim or defense in this case.  Plaintiffs are not, as AXA contends, using valuation objections to hide relevant discussions about the COI increase.  If a valuation document discusses COI or the COI increase beyond merely mentioning those things, such as by discussing the risk of a future COI increase,[2] Plaintiffs produced that document.  But valuations that simply measure the impact of the COI increase from the higher premiums to be paid in the future over the insured's life expectancy ("LE") have no bearing on any claim[3] or defense.[4]

      Plaintiffs have produced thousands of pages describing how Plaintiffs value their policies using LE estimates prepared by third-party consultants.  Plaintiffs have also produced documents reflecting what they knew about mortality generally, such as discussions about industry mortality tables and how those tables demonstrate the continuing improvement in mortality over time,

---

[1] Discovery in this case is nearly complete.  To date, Plaintiffs have reviewed 307,746 documents and produced 37,845 documents consisting of hundreds of thousands of pages.

[2] Contrary to AXA's suggestion in footnote 4, Plaintiffs' valuations have no bearing on whether AXA "underpriced" the AULII policies.  AXA priced the AULII policies based on, among other factors, its own mortality assumptions and aggregate mortality experience.  *See, e.g.*, ECF 160 (Declaration of AXA Actuary, Harold Luber) (describing AXA's proprietary mortality assumptions as the "Insurance equivalent of the secret formula for Coca-Cola").  Plaintiffs have no access to, and their valuations do not incorporate, AXA's mortality assumptions.  They are based on individual health assessments of the insureds.

[3] Valuations are not relevant to Plaintiffs' damages because Plaintiffs do not seek damages for the diminution in value of their policies.  Rather, Plaintiffs' damages consist of the increased COI paid as a result of the COI increase.

[4] *See, e.g.*, Ex. A (EAA-000068302) (Spreadsheet titled "EAA COI Increase Info").  Plaintiffs withheld this document but attaches it here under seal solely to oppose AXA's Motion.  This valuation document is not relevant, despite mere references to "COI Increase Percentage" numbers, none of which relate to AXA's COI Increase.  As another example of Plaintiffs' surgical application of the valuation designation, Ex. B (EAA-000088112) is a spreadsheet also entitled "EAA COI Increase Info."  Although the document has limited or no relevance, it does not include valuation information, therefore Plaintiffs produced it in full.  But again, while the document contains certain "COI Increase Percentage" numbers, none relate to AXA's COI Increase.



undermining AXA's claim that its rate increase is justified by adverse mortality.  Plaintiffs also have produced thousands of pages discussing AXA's COI increase, which consist largely of administrative documents that merely mention the rate increase.[5]  The Court, however, denied AXA's motion to compel regarding policy-level valuations based on individual LEs, agreeing with Plaintiffs that these documents are irrelevant.[6]  Additionally, when Plaintiffs served their responses to AXA's RFPs over a year ago, Plaintiffs stated clearly that where a document mentions the COI increase in the context of policy valuation, Plaintiffs were not producing that document.[7]  Thus, for example, in response to AXA's RFP #9 requesting "[a]ll documents concerning the COI Adjustment," Plaintiffs stated that "[t]o the extent AXA seeks documents concerning other financial impacts of the COI Adjustment on Plaintiffs, including the impact on the value of the Policies, those documents are not relevant," and Plaintiffs agreed to produce "all non-privileged documents concerning AXA's increase of the cost of insurance …with the exception of documents concerning the value of the Policies."  Ex. F at 28-30.[8]  The valuations are irrelevant, and the mere mention of the COI Increase adds nothing to what Plaintiffs have already produced.

      It is evident from AXA's present Motion (not to mention over 100 third-party subpoenas and other baseless discovery positions) that AXA is using discovery to unduly burden Plaintiffs and any policyholder that sues it for violating the terms of its policies, which AXA no doubt hopes will deter policyholders from enforcing their rights.  What AXA seeks by its Motion will never be used at trial – hundreds of huge Excel files that identify all of Plaintiffs' policies (including non-AXA policies) that merely mention the COI increase, which is duplicative of what Plaintiffs have produced already.  The parties have been engaged in discovery for over two years; the fact discovery cut-off is imminent.  Plaintiffs' objection was clear in their initial

---

[5] *See, e.g.*, Exs. C (EAA-000037845) and D (EFG-000021146).

[6] *See* Ex. E (5/8/18 Tr. 26:8-18).  The Court held that Plaintiffs' valuation and acquisition of AULII policies are irrelevant.  AXA cites to sections from the 5/8/18 hearing to argue that any reference to the COI increase or COI generally is relevant, and that Plaintiffs agreed to produce such documents.  These citations do not support AXA's argument, as they relate to a discussion about Plaintiffs' acquisition documents, not valuation documents.  For example, AXA states: "'the relevant set of documents' includes documents concerning the 'COI increase.'"  However, this excerpt is taken directly from Plaintiffs' description of the types of ***acquisition*** documents Plaintiffs agreed to produce: "any acquisition documents that bear on this issue, including documents concerning the circumstances under which AXA may or may not change COI rates, the possibility that AXA may or may not change COI rates, the COI provisions of the AULII policies and the COI increase."  *Id.* At 22:5-11.  The Court ultimately held that it was "not inclined to think that the broader set of acquisition-related documents is relevant here."  *Id.* At 22:16-17.  Accordingly, AXA's cherry-picked citations, without discussion of context, are misleading.  Similarly, AXA's reliance on the *U.S. Bank* case is again misplaced.  That case involved a plaintiff withholding a document that was relevant to the acquiescence defense at issue.  *U.S. Bank Nat'l Ass'n v. PHL Variable Ins. Co.*, 2013 WL 1728933, at *4 (S.D.N.Y. Apr. 22, 2013).  As evidenced by Ex. A (EAA-000068302), the withheld valuation documents have no bearing on any such defense—or any defense—in this case.

[7] AXA's citations to the contrary are not convincing.  Exhibit D to AXA's motion contains a statement made *by AXA* confirming Plaintiffs were producing documents concerning whether AULII was underpriced or overpriced, not that Plaintiffs were producing every document that merely mentioned the COI increase.  Exhibit E to AXA's motion supports Plaintiffs' position that the withheld valuation documents do not "discuss the COI increase" – they only marginally relate to the COI increase in that COI is a component in valuing policies.

[8] *See also* Ex. G at 2, 4 n.2 (3/20/18 Letter from K. LeQuang to A. Hood) (noting that "Plaintiffs specifically disclosed . . . that they were excluding these [valuation] documents from their production").



responses and reiterated in their opposition to AXA's prior motions to compel.[9] AXA had every opportunity to address this issue over the past two years, and it did not do so. The Court should deny AXA's Motion.

**Plaintiffs' Logs:** Since as early as March 2018, Plaintiffs have stated that they have withheld specific categories of documents concerning "valuation," "individual life expectancy," and "policy acquisition," and explained the bases for withholding these documents on relevance grounds. *See* Ex. G at 3-7. The Court also has already ruled that these documents are not relevant. *See, e.g.*, Ex. E at 26:8-18. Despite this, AXA demanded that Plaintiffs provide a log of documents withheld on non-privileged grounds in December 2018, seeking to leverage the Court's ruling on Brach's motion to compel to PricewaterhouseCoopers ("PwC").[10] But unlike PwC, Plaintiffs have always made clear the categories of documents that they have withheld—documents the Court previously ruled are irrelevant.[11] *See, e.g.*, Ex. E at 26:8-18.

Furthermore, while Plaintiffs were not obligated to log these documents—because Plaintiffs identified the basis for withholding on slipsheets and in a metadata overlay provided to AXA—Plaintiffs agreed to supplement their withholding log in an attempt to resolve this dispute without the need for Court intervention. Yet AXA now demands that Plaintiffs amend the logs "at least with the level of detail provided in the PwC logs."[12] Again, however, AXA ignores the fact that Plaintiffs have already explained in their logs that these documents are acquisition, valuation, and life expectancy documents. AXA's request that the Court order Plaintiffs to draft unique descriptions of each withheld document is simply another attempt to unduly burden Plaintiffs in the final weeks of discovery.[13] Amending the log will result in nothing more than the information Plaintiffs have already provided to AXA.[14] The burden of updating the logs far outweighs any potential benefit, and the Court should deny AXA's Motion.

As always, we are available if the Court would like to discuss this or any other matter.

---

[9] Indeed, just a few weeks after the 5/8/18 hearing, AXA filed its renewed motion to compel valuation documents and argued that valuation documents are relevant because they "show that Plaintiffs valued policies based on projected mortality information and multipliers of standard industry tables ***and COI charges***—issues at the crux of this lawsuit." ECF 174 at 3 (emphasis added). AXA's professed understanding of the Court's rulings and Plaintiffs' in-Court representations is directly contradicted by these previous statements.

[10] *See* Ex. H (12/26/2018 email from L. Northrup to Plaintiffs' Counsel).

[11] AXA says it has "good reason to believe that the withheld documents contain relevant information" because Plaintiffs have produced documents that were previously withheld or redacted as valuation, acquisition, or life expectancy documents. First, this has nothing to do with the adequacy of Plaintiffs' withholding log. Second, Plaintiffs' production of such documents only underscores the fact that Plaintiffs have been willing to supplement their productions when relevant documents have been identified.

[12] *See* Ex. I (3/11/19 email from E. Culbertson to L. Herlinger).

[13] AXA's claims there is no burden for Plaintiffs to produce the documents at issue and amended logs by tomorrow, March 15. This statement is absurd. Plaintiffs cannot flip a switch and produce documents without PII and privilege review, quality control, and vendor processing (from multiple countries in this instance).

[14] For example, a valuation spreadsheet provides multiple metadata fields and described as a "valuation document withheld based on objections." In line with the PwC log, Plaintiffs would describe this as an "EFG spreadsheet providing valuation estimates for individual life insurance policies," which is information already known to AXA.



Respectfully Submitted,

*/s/  Khai LeQuang*

Khai LeQuang

cc:     David Gelfand (dgelfand@milbank.com); Stacey Rappaport (srappaport@milbank.com)

Substantially for the reasons set forth above, AXA's letter motion is DENIED.  The Clerk of Court is directed to terminate Docket No. 266.

SO ORDERED.

March 18, 2019