

April 4, 2019

**VIA ECF**

Hon. Jesse M. Furman
United States District Court
Southern District of New York
40 Foley Square
New York, NY 10007

Orrick, Herrington & Sutcliffe LLP
2050 Main Street
Suite 1100
Irvine, CA 92614-8255

+1 949 567 6700

**orrick.com**

**Khai LeQuang**
E  klequang@orrick.com
D  +1 949 852 7708
F  +1 949 567 6710

Re: *EFG Bank AG, Cayman Branch, et al. v. AXA Equitable Life Ins. Co.,* 17 Civ. 4767 (JMF) (S.D.N.Y.) [rel. 16 Civ. 740, 17 Civ. 4803, 17 Civ. 9355, 18 Civ. 2111, 18 Civ. 10730]

Dear Judge Furman:

Plaintiffs submit this letter in response to AXA's letter motion filed on April 2, 2019 ("Motion") seeking to compel out-of-state, non-party Maple Life Analytics ("MLA") to produce irrelevant valuation and life expectancy documents.  *See* Dkt. No. 306.  Plaintiffs respectfully request that the Court deny the Motion in its entirety because (a) the Motion is procedurally defective; and (b) the valuation documents AXA seeks are irrelevant.

The Court should deny AXA's Motion because AXA failed to comply with Federal Rule of Civil Procedure 45(d)(2)(B)(i), which requires that motions to compel the production of documents from non-parties be made in a district where compliance is required—that is, "within 100 miles of where the person resides, is employed, or regularly transacts business in person." *See* Fed. R. Civ. P. 45(c)(2)(A).  MLA is located in Bethesda, Maryland.  For this reason, AXA identified the place of compliance for the subpoena in Washington D.C. (less than 10 miles from MLA).  *See* Ex. A at 5 (Subpoena to MLA).  Accordingly, AXA must file any motion to compel against MLA in the U.S. District Court for the District of Columbia, not here before this Court. *See United States ex rel. Ortiz v. Mount Sinai Hosp.*, 169 F. Supp. 3d 538, 543 (S.D.N.Y. 2016) ("[I]f a motion to compel is necessary, the motion must be made in 'the court for the district where compliance is required.'")  For this reason, the Court should deny AXA's Motion for failure to comply with Rule 45(d)(2)(B)(i).

Even if the Court were to consider AXA's Motion, the Court should deny the Motion because the documents AXA seeks are irrelevant valuation and life expectancy documents.  In this latest attempt to protract discovery and harass and unduly burden Plaintiffs and other third parties, AXA mischaracterizes Mr. Boger's testimony and the issues generally, suggesting that the documents at issue are anything other than valuation and life expectancy documents the Court has already held are irrelevant.[1]  Namely, AXA seeks (1) an Excel spreadsheet AXA itself described as "containing the portfolio valuations[2] prepared by Mr. Boger's team in support of the

---

[1] *See* Ex. B, Tr. of May 8, 2018 Conference at 20:19-21:5; Ex. C, Tr. of June 13, 2018 Conference at 28:9-30:12; *see also* Order Denying AXA's Letter Motion to Compel dated March 18, 2019 (Dkt. No. 284).

[2] Section A of AXA's Motion confuses MLA's definition of valuation techniques and assumptions with its definition of valuation reports.  *See* Motion at 2.  Mr. Boger testified that

April 4, 2019
Page 2



February 22, 2013 MLA 'Life Settlement Mortality and Portfolio Analysis,'" *see* Ex. A to AXA's Motion at 1 (the "Valuation Spreadsheet"); (2) an equivalent spreadsheet prepared by MLA for EFG in 2015; and (3) an equivalent analysis prepared by MLA for EFG in 2015. *See* Motion at 1.

The documents AXA seeks reflect calculations of life expectancies that are unique to individual insureds, which are used for MLA's valuation models. *See, e.g.*, Ex. D, Tr. of Steve Boger's Deposition ("Boger Tr.") at 188:6-10 ("We *modeled the underwriters' LE* by developing tPx curves to match them." (emphasis added)); 200:19-22 ("I think tPx is a mortality curve *for each individual*." (emphasis added)); 243:21-244:4 ("[Q:] And what is the basis for coming up with the tPx number? A: In this case, it's to take the published life expectancy in months and solve for a multiplier of the underlying table – normally the 2008 VBT – such that the resulting tPx curve *sums to the LE, because that's the definition of an LE* . . . .") (emphasis added)).

These documents do not reflect aggregate mortality curves that are "parallel" to AXA's mortality assumptions. *See* Ex. D, Boger Tr. at 245:10-16 ("Q: Does the information contained in the internal spreadsheets do any sort of analysis to compare . . . against AXA's mortality assumptions? . . . A: I don't know anything about AXA's mortality assumptions, so I can't compare them."). Unlike MLA's valuations or life expectancy analyses, AXA's mortality assumptions apply factors to a base industry table that are derived from AXA's actual mortality experience without regard for specific individuals' medical histories that postdate underwriting. That Mr. Boger described life expectancies as "mortality curves" does not turn the life expectancies into mortality tables or aggregate mortality assumptions. Aside from the base mortality tables, which are revealed in numerous documents Plaintiffs have already produced and in Mr. Boger's testimony, no "parallel assumptions" exist between MLA's tPx values used for individual life expectancies and AXA's mortality assumptions that are based on AXA's own underwriting and mortality experience.[3]

Further, that EAA and/or LSH produced "comparable information" has no bearing on MLA's obligation to do so here. LSH is a different party represented by different counsel in a different action alleging different claims. Documents are not relevant in this action simply because they were produced in the *LSH* litigation. And while AXA is correct that—in order to compromise and avoid burdening the Court with a frivolous motion to compel—EAA recently produced certain documents in response to AXA's requests, Plaintiffs' counsel specifically informed AXA that their agreement to provide those irrelevant documents "does not mean that

---

MLA's work for EFG included "review[ing] valuation techniques and assumptions . . . ." *See* Ex. D, Boger Tr. at 50:3-51:1. MLA did not, however, prepare "valuation reports" consisting of "precise numerical calculations" for EFG. *See id.* at 62:9-24.

[3] AXA states in its Motion that it intended to submit a declaration from its expert supporting its argument that the documents it now seeks are relevant. AXA has not filed this declaration as of the time Plaintiffs filed this response. To the extent AXA files an expert declaration with a later motion to compel, the Court should not consider it in ruling on this Motion.



April 4, 2019
Page 3

[Plaintiffs] are agreeing to produce any other information concerning life expectancy . . . ." *See* Ex. E (March 25, 2019 email from H. Boylan Clark to E. Culbertson).

Finally, AXA's request for MLA to conduct a search for and produce the Valuation Spreadsheet and "any equivalent" spreadsheet or analysis prepared for EFG is untimely and unduly harassing to a non-party to this litigation. MLA served its objections and responses to AXA's subpoena nearly six months ago, on October 9, 2018. AXA waited until a week and a half before the close of fact discovery to pursue a deposition of MLA. Accordingly, the Court should deny AXA's untimely, eleventh-hour request for documents that are not relevant to any claim or defense in this action.

As always, we are available if the Court would like to discuss this or any other matter.

Respectfully Submitted,

*/s/  Khai LeQuang*

Khai LeQuang

cc:     David Gelfand (dgelfand@milbank.com); Stacey Rappaport (srappaport@milbank.com)